**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JOHN SMITH, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                          **No. 20-949**

**NEW ORLEANS CITY, ET AL.**                        **SECTION I**

**ORDER AND REASONS**

A high-speed police pursuit through the Broadmoor/Washington Avenue neighborhood in New Orleans ended in three deaths and the destruction of a local business.[1]  Consequently, John and Beverly Smith (the "Smiths") bring this action individually and on behalf of their business, UNITY-1 Beauty Supply and Hair Salon (the "salon").[2]  The remaining defendants (collectively, the "defendants") in the suit are:  William Hery ("Hery"), Colby Stewart ("Stewart") and Alex Mikkelsen ("Mikkelsen")—(collectively, the "officers") all sued in their official and individual capacities[3]—Superintendent Shaun Ferguson ("Superintendent Ferguson") and New Orleans Mayor LaToya Cantrell ("Mayor Cantrell") sued in their official capacities, as well as the City of New Orleans (the "City") and the New Orleans Police Department ("NOPD").[4]  The Smiths assert federal claims pursuant to the Fourth

---

[1] R. Doc. No. 1, at 6–7 ¶ 13–14.

[2] *Id.* at 2 ¶ 2.  According to the complaint, the Smiths owned and operated the salon and beauty product store in the Broadmoor/Washington Avenue area of New Orleans. R. Doc. No. 1, at 6 ¶ 12.  Plaintiffs stated in their opposition, filed on September 16, 2020, that they would submit an amended complaint, but they have not sought leave to do so.  *See* R. Doc. No. 35, at 9.

[3] Other NOPD officers were previously dismissed from the suit.  *See* R. Doc. No. 39.

[4] R. Doc. No. 1, at 3–4 ¶ 8.  Plaintiffs also named a defendant "XYZ Insurance Company," which has not been identified nor appeared in the case.  *See id.* at 4 ¶ 8.

and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983, as well as claims under Louisiana law.[5]

Each of the defendants has moved to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[6] They all contend that the Smiths failed to state a claim of any constitutional violations.[7] The officers also argue that the Court should dismiss the claims against them in their individual capacities because they are entitled to qualified immunity.[8] Finally, all defendants ask that the Court decline to exercise supplemental jurisdiction over the Smiths' state law claims.[9] For the following reasons the motions are granted.

## I.

---

[5] *Id.* at 8 ¶ 17.   Plaintiffs also claim violation of their rights pursuant to "the Civil Rights Act of 1866, and 1871[.]" *Id.* at 1 ¶ 1. However, the pertinent portions of those statutes are now encompassed in § 1983. *See Dennis v. Higgins*, 498 U.S. 439, 454 (1991) (Kennedy, J., dissenting) (stating that "Section 1983 has its origins in § 2 of the Civil Rights Act of 1866, 14 Stat. 27, and § 1 of the Civil Rights Act of 1871, 17 Stat. 13."); *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 545 (1972) ("The broad concept of civil rights embodied in the 1866 Act and in the Fourteenth Amendment is unmistakably evident in the legislative history of [§] 1 of the Civil Rights Act of 1871, 17 Stat. 13, the direct lineal ancestor of [§] 1983[.]"); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 712, 722 (1989) (stating that "[w]hat is now § 1983 was enacted as § 1 of "An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States and For other Purposes," Act of April 20, 1871"). In apparent recognition of this, plaintiffs assert claims pursuant to only § 1983. R. Doc. No. 1, at 8 ¶ 17; R. Doc. No. 35, at 3 (mentioning no federal statutory claims but for those pursuant to § 1983). The Court, therefore, will not address the alleged violation of plaintiffs' rights pursuant to the Civil Rights Act of 1866 and 1871 separately from plaintiffs' § 1983 claim.

[6] R. Doc. No. 26-1 (Mayor Cantrell, Superintendent Ferguson, the City, and the NOPD; R. Doc. No. 27-1 (Hery and Stewart); R. Doc. No. 28-1 (Mikkelsen).

[7] R. Doc. No. 26-1, at 1; R. Doc. No. 27-1, at 1; R. Doc. No. 28-1, at 1.

[8] R. Doc. No. 27-1, at 14; R. Doc. No. 28-1, at 11.

[9] R. Doc. No. 26-1, at 11–12; R. Doc. No. 27-1, at 16; R. Doc. No. 28-1, at 12–13.

On March 20, 2019, NOPD officers attempted to pull over a suspected stolen vehicle through a routine traffic stop.[10]  When the car—which was "being operated by minor children"— failed to stop, a high-speed pursuit ensued through neighborhood roads.[11]  Over a mile into the chase, the driver of the fleeing vehicle lost control and crashed into the salon.[12]  The explosive collision resulted in the death of the vehicle's occupants and the death of a patron inside the building.[13]  The fire from the accident burned and ultimately destroyed the salon, as well as the Smiths' "business, income and life's work."[14]

According to the complaint, under NOPD policy, officers should not engage in high-speed pursuits prompted solely by property crimes.[15]  Here, according to the complaint, the NOPD officers violated this internal policy and procedure when they pursued the suspects at high-speeds because the officers suspected the vehicle to have been stolen.[16]  Additionally, NOPD officers allegedly deactivated their body cameras, also in violation of internal policy.[17]

## II.

### A. Rule 12(b)(6) Standard

---

[10] *Id.* at 6 ¶ 11.
[11] *Id.*
[12] *Id.* at 6–7 ¶ 13
[13] *Id.* at 7 ¶ 14.
[14] *Id.*
[15] *Id.* at 6 ¶ 11.
[16] *Id.*
[17] *Id.* at 7 ¶ 14.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and cannot survive a motion to dismiss. *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). On a Rule 12(b)(6) motion to dismiss, "the factual information to which the court addresses its inquiry is limited to the (1) the [sic] facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal

4

Rule of Evidence 201."[18] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

"Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (alteration in original) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). Where applicable, qualified immunity can operate as one such bar. *See Turner v. Lieutenant Driver*, 848 F.3d 678, 696 (5th Cir. 2017).

## B. Qualified Immunity

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

---

[18] Rule 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Where a public official invokes qualified immunity as a defense to a civil action, the plaintiff has the burden of establishing a constitutional violation and overcoming the defense. *See Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curium) (en banc)). To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *al-Kidd*, 563 U.S. at 735). The Court has discretion to decide which of the two prongs of the qualified immunity analysis to examine first. *See Jackson*, 959 F.3d at 200.

At the 12(b)(6) stage, to find that a defendant violated the law at step one of the qualified immunity analysis is to say that, taking the facts in the light most favorable to the plaintiff, the plaintiff has stated a claim upon which relief may be granted—that is, that the alleged conduct violated a constitutional right. *See Morgan*, 659 F.3d at 384.

As to the second step, for "a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Turner*, 848 F.3d at 685 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *al-Kidd*, 563 U.S. at 741). Once a plaintiff alleges that an official's conduct violated a clearly established right, a court

must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident." *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005).

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015); *see also Thompson v. Upshur Cty.*, 245 F.3d 447, 460–63 (5th Cir. 2001) (holding that multiple officers' actions were objectively reasonable because, among other reasons, not all reasonable officers would recognize the unconstitutionality of their actions). When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (quoting *Morgan*, 659 F.3d at 371–72).

When the defense of qualified immunity is raised in a motion filed pursuant to Rule 12(b)(6), "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). A court must determine that a plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (quoting *Wicks v. Miss. State Emp't. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable

for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## C. Section 1983

"Section 1983 provides a private right of action against parties acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cty.,* 535 F.3d 365, 373 (5th Cir. 2008).

Additionally, while municipalities may be liable under § 1983, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978), "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see*

*Monell*, 436 U.S. at 690–91.  Accordingly, a plaintiff must establish "that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."  *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

### III.

As a preliminary matter, the claims against the NOPD must be dismissed because it "is not recognized as a legal entity or person capable of being sued." *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 691 (E.D. La. 2012) (Feldman, J.); *see, e.g.*, *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007) (Beer, J.) (explaining that Louisiana law governs whether the NOPD is an entity that can be sued, pursuant to Fed. R. Civ. P. 17(b), and that under Louisiana law, the NOPD is not a "suable entity").

As to the remaining defendants, the Smiths, in their personal capacity and as owners and operators of the salon, bring this action to seek compensatory and punitive damages, "affirmative and equitable relief," and the award of costs and attorney's fees.[19]  Specifically, the Smiths claim a violation of Fourth Amendment protection from unlawful seizure and a denial of Fourteenth Amendment due process and equal protection, pursuant to 42 U.S.C. § 1983;[20] violations of rights secured

---

[19] R. Doc. No. 1, at 2 ¶¶ 2, 12–13 ¶¶ 28–29.
[20] *Id.* at 1–2 ¶ 1.

under the Louisiana Constitution;[21] liability under La. Civ. Code arts. 2315, 2315.1, 2315.2, 2316, 2317 and 2320;[22] and municipal liability under 42 U.S.C. § 1983.[23]

## A. Constitutional Claims

Plaintiffs' federal claims, which arise under 42 U.S.C. § 1983, allege that the NOPD officers' improper high-speed pursuit constituted an illegal seizure, in violation of the Fourth Amendment, and denial of due process and equal protection, in violation of the Fourteenth Amendment, when the fleeing suspect crashed into their business.[24] The Smiths argue that the officers "intentionally, willfully and with full knowledge of their illegal actions, ignored the departments chase policy, turned off their patrol cars' video cameras, and acted in a foreseeable unreasonably dangerous, negligent and callous manner that resulted not only in the deaths of the occupants in the vehicle being chased[,]" but also in the death of the salon's patron and the salon's "destruction."[25] Defendants do not dispute that the pursuit was in violation of NOPD policies, but they argue that plaintiffs' § 1983 claims must be dismissed because the Smiths fail to state allegations that sustain any constitutional violation necessary to support a § 1983 claim.[26] Additionally, the officers claim they are entitled to qualified immunity.[27]

---

[21] *Id.* (specifying Louisiana Constitution Article 1 § 2 and 5).

[22] *Id.*

[23] *Id.* at 10–11 ¶ 23.

[24] *Id.* at 1–2 ¶ 1.

[25] *Id.* at 7 ¶ 14.

[26] R. Doc. No. 26-1, at 4 (Mayor Cantrell, Superintendent Ferguson, the City, and the NOPD); R. Doc. No. 27-1, at 8 (Hery and Stewart); R. Doc. No. 28-1, at 2 (Mikkelsen).

[27] R. Doc. No. 27-1, at 14–15 (Hery and Stewart); R. Doc. No. 28-1, at 11–12 (Mikkelsen).

*i. Fourth Amendment Seizure*

The Fourth Amendment protects the right to be secure from unreasonable seizures. U.S. Const. amend. IV.  A person is seized by the police and therefore entitled to challenge the government's action under the Fourth Amendment when the officer, "by means of physical force or show of authority . . . terminates or restrains his freedom of movement [] *through means intentionally applied*."  *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis in original) (internal citations and quotation marks omitted).  "Physical force is not required to effect a seizure; however, absent physical force, '*submission* to the assertion of authority'" is necessary.  *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (emphasis in original) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).  A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [he was] not free to leave."  *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

The Smiths contend that the NOPD officers' improper high-speed pursuit resulted in an unconstitutional seizure.[28]  They argue that the police seized their salon and "life's work" when a fleeing vehicle, evading police apprehension, crashed into the building and destroyed their business "because the officers used physical force or show of authority by instituting a chase which resulted in [the] accident[.]"[29]  The Smiths note their lack of involvement in the pursuit, adding that they were

---

[28] R. Doc. No. 35, at 6.
[29] R. Doc. No. 35, at 6.

neither a "party" or "participant" to the events that lead to the destruction of their property, business, and income.[30]   Consequently, they argue that "the decision, perceived power and authority and actions of giving pursu[i]t of the suspected stolen vehicle at speeds in excess of 80 miles per hour in a 30 mile per hour zone, const[itu]tes a seizure in violation of the Fourth Amendment."[31]

The Supreme Court in *Brower v. County of Inyo* explained that a "[v]iolation of the Fourth Amendment requires an *intentional* acquisition of physical control."  489 U.S. 593, 596 (1989) (emphasis added).  The Smiths fail to allege that the officers were aware of their existence before the crash, let alone that they were intentionally seized.  Further, plaintiffs do not allege that the officers controlled the fleeing vehicle's movement, or that it or its drivers served as an instrument of the government.  *See Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 614 (1989) ("Although the Fourth Amendment does not apply to a search or seizure . . . effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government").

 Regardless, the destruction of the Smiths' business resulted from the fleeing suspect's automobile being involved in an accidental collision, not a purposeful seizure by the NOPD.  *See Skinner*, 489 U.S. at 614 (noting that the Fourth

---

[30] *Id.*
[31] *Id.*

Amendment does not apply to a seizure "effected by a private party on his own initiative").[32]

The Court finds that plaintiffs failed to plausibly allege a violation of the Fourth Amendment protection against unreasonable seizure.  Consequently, this claim against the City must be dismissed.  *See Baughman v. Hickman*, 935 F.3d 302, 311 (5th Cir. 2019) ("[A]n underlying constitutional violation is required to impose liability on the governmental body[.]"); *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Without an underlying constitutional violation, an essential element of municipal liability is missing.").

In addition, the relevant § 1983 claim against the NOPD officers in their official capacities must be dismissed because official capacities claims are treated as claims against the municipality.  *See Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279–80 (5th Cir. 2015); *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial capacity suits are really suits against the governmental entity[.]"); *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) ("In any case in which a defendant government official is sued in his individual and

---

[32] Additionally, there was no underlying Fourth Amendment violation stemming from the pursuit itself because the officers only attempted to seize the occupants and did not stop the fleeing vehicle through means intentionally applied.  *Brendlin*, 551 U.S. at 254; *see Brower*, 489 U.S. at 597  ("The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash."); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[A] police pursuit in *attempting* to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment") (emphasis added) (citing *Hodari D.*, 499 U.S. at 626).

official capacity, and the city or state is also sued . . . [t]he official-capacity claims and the claims against the governmental entity essentially merge."); *see also Whitley*, 726 F.3d at 639 n.3 ("To the extent Whitley asserts claims against Appellees in their official capacities, we find such claims also fail for lack of an underlying constitutional violation.").

The Court further notes that because the Smiths have not plausibly alleged an unconstitutional seizure, they also have failed to meet their burden to overcome the officers' defense of qualified immunity. *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) ("If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity.").[33]

*ii. Fourteenth Amendment Due Process*

The Fourteenth Amendment right to due process protects the individual "against arbitrary action of government." *Lewis*, 523 U.S. at 845 (quoting *Wolf v. McDonell*, 418 U.S. 539, 558 (1974)). When faced with a due process challenge, a

---

[33] While the Court finds that plaintiffs have failed to overcome the defense of qualified immunity invoked by the officers because they have not plausibly alleged a Fourth Amendment claim of an unconstitutional seizure, the Court notes Fifth Circuit caselaw suggesting that the § 1983 claims against the officers may be dismissed without reaching the qualified immunity issue. *See Goodman*, 571 F.3d at 396 (explaining that because the plaintiff failed to set forth a § 1983 claim, "an analysis of [defendant's] defense of qualified immunity is unnecessary. Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."); *Lytle*, 560 F.3d at 410 ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

court must determine whether the behavior of the governmental officer "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (quoting *Lewis*, 523 U.S. at 847 n.8). The "shock the conscience" standard is satisfied "where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference." *Id.* (quoting *Lewis*, 523 U.S. at 849–50).

Principle to plaintiffs' Fourteenth Amendment claim is the officers' conduct during the pursuit, which they argue was "arbitrary," and "egregious[.]"[34] They assert that the NOPD officers "created the danger that intentionally caused the damage, destructions and total loss of the Smith's [sic] property[.]"[35]

While the Smiths assert that the officers' pursuit was against NOPD policy, the "failure to follow official policy, by itself shows, at most, negligence and cannot support a finding of deliberate indifference." *Mason*, 806 F.3d at 279. Further, even if the officers made the conscious decision to pursue the vehicle against internal policy, plaintiffs have not presented any facts that would support a reasonable inference that the officers' intent was to cause harm. *See Lewis*, 523 U.S. at 854 ("[A] purpose to cause harm . . . ought to be needed for due process liability in a pursuit case."). "[H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment,

---

[34] R. Doc. No. 35, at 9–10 (quoting *Cty. of Sacramento*, 523 U.S. at 845 and *Rosales-Mireles*, 138 S. Ct. at 1906.
[35] *Id.* at 10.

redressable by an action under § 1983." *Id.* The Smiths have failed to show, except through conclusory allegations, that the officers' conduct intended to damage them or their property "in some way unjustifiable by any governmental interest." *See Rosales-Mireles*, 138 S. Ct. at 1906. Thus, plaintiffs have not set forth any allegations that would support a reasonable inference that the officers' behavior rises to the level of conscience-shocking conduct.

The Court finds that plaintiffs have failed to plausibly allege a violation of the Fourteenth Amendment right to due process. Therefore, this claim against the City and the other NOPD officers in their official capacities are dismissed. This claim against all officers in their individual capacities must also be dismissed because, in the absence of a plausibly alleged constitutional violation, plaintiffs cannot overcome the defense of qualified immunity.[36]

### iii. Fourteenth Amendment Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) a state actor intentionally

---

[36] Again, the Court notes the Fifth Circuit's guidance in *Goodman* and *Lytle* suggesting that a court need not examine the qualified immunity question if it finds that the alleged conduct did not violate a constitutional right. *Goodman*, 571 F.3d at 396; *Lytle*, 560 F.3d at 410.

discriminated against [him] because of membership in a protected class[,] or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal quotations and citations omitted).

The Smiths assert that defendants violated their right to equal protection, pursuant to the Fourteenth Amendment.[37]  However, the Smiths fail to allege that they belonged to any protected class; that defendants "discriminate[d], either facially or in its application, against members of any protected class"; or that defendants applied a law or policy to them "in a manner different from other similarly situated individuals." *Id.*  As such, the Court finds that the Smiths have failed to plausibly allege a violation of equal protection pursuant to the Fourteenth Amendment.

Therefore, this claim against the City and the other NOPD officers in their official capacities is also dismissed.  As with the due process claim, the equal protection claim against all officers in their individual capacities must be dismissed because, in the absence of a plausibly alleged constitutional violation, plaintiffs cannot overcome the defense of qualified immunity.[38]

## B. Municipal Liability

Finally, plaintiffs assert that municipal liability is available under *Monell* because the City was responsible for the training and discipline of NOPD officers and

---

[37] R. Doc. No. 1, at 1–2 ¶ 1.
[38] Again, the Court notes the Fifth Circuit's guidance in *Goodman* and *Lytle* suggesting that a court need not examine the qualified immunity question if it finds that the alleged conduct did not violate a constitutional right. *Goodman*, 571 F.3d at 396; *Lytle*, 560 F.3d at 410.

that, through the NOPD, the City created, instituted and was responsible for overseeing the enforcement (or lack thereof) of the policies and procedures that violated the Smiths' constitutional rights.[39]   Plaintiffs also allege that Superintendent Ferguson and Mayor Cantrell are responsible for the supervision, administration, policies, practices, procedures and customs of the NOPD, as well as for the training and discipline of the officers.[40]

To state a *Monell* claim against a municipality, a plaintiff must plead facts "that plausibly establish: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" *Piotrowski*, 237 F.3d at 578.  The Smiths claim that Ferguson, Cantrell, the City, and the NOPD failed to train, supervise and discipline the officers who pursued the fleeing vehicle, and that this failure was "the driving force" behind the destruction of their business.[41] The Smiths also allege that the failure to train and discipline provided tacit permission for the officers to continue their improper property pursuits, which harmed third-party bystanders.[42]

Relief under a municipal liability theory, however, cannot be granted solely because a municipality employs tortfeasors.  *See Monell*, 436 U.S. at 691.  Rather, plaintiffs must prove that the municipality's "official action or imprimatur" caused

---

[39] R. Doc. No. 1, at 10 ¶ 21.
[40] *Id.* at 11 ¶ 23.
[41] R. Doc. No. 35, at 11.
[42] R. Doc. No. 1, at 11 ¶ 23.

an underlying constitutional violation. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 578).

Because plaintiffs have failed to plausibly state a Fourth Amendment or Fourteenth Amendment violation, the City, Ferguson and Cantrell cannot be liable under a § 1983 municipal liability theory. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) ("The Supreme Court has explained that a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'") (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Romero v. City of Grapevine*, 888 F. 3d 170, 178–79 (5th Cir. 2018) ("In order to confer liability on the City and [the police chief] for deficient supervisory conduct, there must be 'a sufficient causal connection between [the City's] conduct and the constitutional violation.' '[I]t is facially evident that this test cannot be met if there [are] no underlying constitutional violations.'"). Consequently, plaintiffs' *Monell* claim against the City, Superintendent Ferguson in his official capacity and Mayor Cantrell in her official capacity must be dismissed.

### C. State Law Claims

The Court has concluded that plaintiffs' federal law claims should be dismissed; only their state law claims remain. A district court has "wide discretion" when deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated. *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). However, the general rule in the Fifth Circuit is "to dismiss state claims

when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

A district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1)  the claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In addition to these factors, the Fifth Circuit has instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Id.*

These factors weigh in favor of dismissal of the Louisiana state law claims without prejudice so that plaintiffs may assert those claims in Louisiana state court. The Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Moreover, allowing Louisiana courts to rule on Louisiana law "encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Bitte v. EMC Mortgage Corp.*, No. 07-9273, 2009 WL 1950911, at *2 (E.D. La. July 1, 2009) (Africk, J.) (citations omitted) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  "[D]eference in this case

with respect to the state law issue[s] promotes the important interest of comity to state courts." *Id*. Furthermore, the parties will not be unduly prejudiced because the litigation is still in its early stages. Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

IV.

For the foregoing reasons,

**IT IS ORDERED** that the motions to dismiss are **GRANTED**. All claims asserted against the New Orleans Police Department are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the federal law claims against the City of New Orleans, Shaun Ferguson in his official capacity, LaToya Cantrell in her official capacity, Alex Mikkelsen in his individual and official capacities, Colby Stewart in his individual and official capacities and William Hery in his individual and official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the state law claims against the City of New Orleans, Shaun Ferguson, LaToya Cantrell, Alex Mikkelsen, Colby Stewart and William Hery are **DISMISSED WITHOUT PREJUDICE** to their being timely asserted in state court.

New Orleans, Louisiana, November 10, 2020.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**